<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LAMONT G. CRYMES, et al., | : | Civil No. 09-3277 (NLH) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| N.J. STATE DEPT. OF | : | |
| CORREC., et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> LAMONT G. CRYMES, #751428A, Plaintiff <u>Pro Se</u>
> Northern State Prison
> P.O. Box 2300
> Newark, New Jersey 07114

**HILLMAN**, District Judge:

Lamont G. Crymes, a prisoner incarcerated at Northern State Prison, seeks to bring this action <u>in forma pauperis</u> without prepayment of fees pursuant to 28 U.S.C. § 1915.  Based on his affidavit of poverty, prison account statement and the apparent absence of three qualifying dismissals, pursuant to 28 U.S.C. § 1915(g), this Court will grant Plaintiff Crymes's application to proceed <u>in forma pauperis</u> and direct the Clerk to file the Complaint in his behalf without prepayment of the filing fee.[1]

---

[1] The caption of the Complaint lists eight plaintiffs in addition to Crymes but none of these additional persons has signed the Complaint, applied for <u>in forma pauperis</u> status or prepaid the $350.00 filing fee.  Court rules require an unrepresented party to personally sign the complaint, <u>see</u> Fed. R.
(continued...)

<u>See</u> 28 U.S.C. § 1915(a).  Having thoroughly reviewed Plaintiff's allegations, this Court will dismiss certain claims and defendants and allow one claim to proceed.  <u>See</u> 28 U.S.C. § 1915(e)(2)(B).

## I.  BACKGROUND

Plaintiff brings this action against 16 named defendants and one Jane Doe.  He asserts the following facts.  On August 8, 2007, officials transferred Plaintiff from the Atlantic County Justice Facility to the Central Reception and Assignment Facility ("CRAF").  Plaintiff alleges that on that day, nurse Jane Doe, with the assistance of defendant corrections officer Flynn, administered a Mantoux injection to Plaintiff to test for tuberculosis ("TB"), even though Plaintiff's medical records established that Plaintiff had tested positive for tuberculosis in 2004 (while he was confined at Southern State Correctional Facility) and the Centers for Disease Control recommend against

---

¹(...continued)
Civ. P. 11(a), and prohibit the Clerk from filing a civil complaint in a person's behalf unless that person has either prepaid the filing fee or been granted permission to proceed <u>in forma pauperis</u>, <u>see</u> Local Civ. R. 5.1(f).  Because no one except Lamont Crymes signed the Complaint and/or applied for <u>in forma pauperis</u> status, this Court will permit the Complaint to be filed in behalf of Crymes only.  If any other person named in the caption desires to file a complaint in this Court, then he may do so by filing a new complaint (which complies with court rules) in a new civil action.

retesting someone who previously tested positive.[2]  Plaintiff

further asserts:

> This [Mantoux] injection has caused life
> threatening illness upon plaintiff Crymes
> where on or about September 2, 2008 plaintiff
> Crymes was medicated with INH and B-6, see
> Exhibit K, prescribed by defendant Robin
> Clemmons, Physician, knowing that due to
> plaintiff's Crymes age 49 years, his liver
> and kidney was compromised.  Plaintiff had to
> undergo extensive monthly laboratory testing
> to screen liver and kidney damage.  See
> Exhibit K.  Defendant Clemmons and Llagas had
> a medical obligation/duty to explain to
> plaintiff Crymes the risk and other available
> medication options for treatment.  They did
> not.
>
>       *              *           *
>
> On or about September 2, 2008, Defendant
> Clemmons prescribed medication "Isoniazid"
> A/K/A INH and B-6 vitamin for a period of
> nine (9) months for a tuberculosis TB reading
> of 15 mm facilitated by Defendants Jane Doe,
> Nurse of 8/8/2007 and Julie Llagas, RN.
> Defendant Clemmons did not perform any
> testing so as to determine the appropriate
> modality of treatment consistent with Dr.
> Jeffrey Pomerantz, MD of Cooper Hospital,
> Camden, New Jersey (Exhibit Q), whom
> plaintiff Crymes consulted with September 4,
> 2007, who informed plaintiff Crymes that five
> (5) different medications may be required.
> (Plaintiff did not see this physician again.)
> Plaintiff became ill from this medication
> experiencing nausea, stomach, and dizziness.
> Defendants Clemmons and Llagas instructed
> plaintiff to continue the medication, that it
> was my body getting use[d] to the medication.

---

[2] Plaintiff refers to Docket entry #1-2 at p. 30, which
indicates that Plaintiff tested positive for TB on March 10,
2004, while incarcerated at Southern State Correctional Facility.

Plaintiff Crymes was called once a month for laboratory (Blood Test), upon asking Nurse Karen . . . what the test was for, she explained, "the medication you['re] tak[ing] at your age (49) can destroy your liver and kidney, and Dr. Clemmons [is] monitoring the medication. Defendant Clemmons never informed plaintiff of the serious side effect of the medication "INH." As a result of the illness plaintiff Crymes suffered in the short time he was tak[ing] the medication [he] was forced to discontinue its use. To date, there was no follow up recourse to explore other remedial cause of medication . . . . Defendant prescribed medication/treatment without conducting appropriate standardize[d] testing to appropriate degree and need for said treatment 11 months after the initial injection. More specifically, Defendant Clemmons failed to adhere to appropriate medical practice meted out by the CDC, Tuberculosis Clinics, and general testing/screening practices for TB detection in the following regards and respects:

(a) Defendant Clemmons did not, in advance to prescribing INH medication to plaintiff Crymes, obtain appropriate laboratory tests prior to prescribing the drug INH "Isoniazid" on September 2, 2008, one year and one month after fatal injection of 8/8/2007;

(b) Defendant Clemmons prescribed the drug without having made a diagnosis of the cause of the problems which was alleged to have been present in plaintiff Crymes at the time involved;

(c) Defendant Clemmons instructed plaintiff Crymes to continue taking the drug even though Defendant Clemmons knew and was advised by plaintiff Crymes that the drug made him ill.

(Compl., ¶¶ 18, 20) (Docket entry #1 at pp. 11-15.)

4

Finally, Plaintiff complains that on August 27 or 28, 2008, defendant Dr. Lutz, a dentist, with the assistance of defendant Mei Qin Sun, his dental assistant, broke Plaintiff's wisdom tooth #32 while attempting to extract same.  Plaintiff then asserts:

> Dr. Lutz left the tooth in plaintiff's Crymes mouth, stating he will set up a consult with an "oral surgeon."  Defendant Sun asked do you want me to schedule this, defendant Lutz stated yes.  Defendant Lutz and Sun did not send plaintiff Crymes out for an oral surgeon.  To date, 9 months later, plaintiff Crymes endure[s] chronic and acute pain as a direct and proximate cause of the negligent treatment received by these two defendants. (Exhibit G)  Defendant Sun responsibility is to follow up on all referral, she did not . . . .  On two subsequent occasion[s] defendant Sun manipulatively scheduled plaintiff Crymes to be seen and treated by that office that initiated the damage, utilizing his right, plaintiff Crymes refused, as the first attempt was unsuccessful and tools/equipment required for oral surgery [are] not available at [the prison].

(Compl. ¶ 23) (Docket entry #1 at pp. 17-18.)

Plaintiff asserts that defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.  Plaintiff seeks damages and other relief deemed proper for violation of his rights under 42 U.S.C. § 1983.

## II.  STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which

a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.  A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

It is long established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nonetheless, the Third Circuit has noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  See Burlington Coat Fact. Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Therefore, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. See Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

After the decision of the United States Supreme Court in

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of

Appeals for the Third Circuit provided the district courts with

guidance as to what pleadings are sufficient to pass muster under

Rule 8.  See Phillips v. County of Allegheny, 515 F.3d 224,

230-34 (3d Cir. 2008).  Specifically, the Court of Appeals

observed as follows:

> "While a complaint . . . does not need
> detailed factual allegations, a plaintiff's
> obligation [is] to provide the 'grounds' of
> his 'entitle[ment] to relief' . . . ."
> Twombly, 127 S. Ct. at 1964-65 . . . ."[T]he
> threshold requirement of Rule 8(a)(2) [is]
> that the 'plain statement [must] possess
> enough heft to 'sho[w] that the pleader is
> entitled to relief.'"  Id. at 1966.  [Hence]
> "factual allegations must be enough to raise
> a right to relief above the speculative
> level."  Id. at 1965 & n.3.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United

States Supreme Court in its recent decision Ashcroft v. Iqbal,

129 S. Ct. 1937 (2009), where the Supreme Court stated as

follows:

> [In any civil action, t]he pleading standard
> . . . demands more than an
> unadorned["]the-defendant-unlawfully-harmed-m
> e["] accusation. [Twombly, 550 U.S.] at 555 .
> . . . A pleading that offers "labels and
> conclusions" or "a formulaic recitation of
> the elements of a cause of action will not
> do." [Id.] at 555.  [Moreover,] the
> plausibility standard . . . asks for more
> than a sheer possibility that a defendant has
> acted unlawfully.  Id. [Indeed, even w]here a

complaint pleads facts that are "merely
consistent with" a defendant's liability,
[the so-alleging complaint still] "stops
short of [showing] plausibility of
'entitlement to relief.'" <u>Id.</u> at 557
(brackets omitted).  [<u>A fortiori</u>,] the tenet
that a court must accept as true all of the
allegations contained in a complaint is
inapplicable to legal conclusions [or to
t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory
statements [, <u>i.e.</u>, by] legal conclusion[s]
couched as a factual allegation [e.g.,] the
plaintiffs' assertion of an unlawful
agreement [or] that [defendants] adopted a
policy "'because of,' not merely 'in spite
of,' its adverse effects upon an identifiable
group." . . . . [W]e do not reject these bald
allegations on the ground that they are
unrealistic or nonsensical. . . .  It is the
conclusory nature of [these] allegations . .
. that disentitles them to the presumption of
truth. . . . [Finally,] the question [of
sufficiency of] pleadings does not turn [on]
the discovery process.  <u>Twombly</u>, 550 U.S.] at
559 . . . . [The plaintiff] is not entitled
to discovery [where the complaint asserts
some wrongs] "generally," [<u>i.e.</u>, as] a
conclusory allegation [since] Rule 8 does not
[allow] pleading the bare elements of [the]
cause of action [and] affix[ing] the label
"general allegation" [in hope of developing
actual facts through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

The Third Circuit observed that <u>Iqbal</u> hammered the "final
nail-in-the-coffin" for the "no set of facts" standard set forth
in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957),[3] which was

---

[3]   The <u>Conley</u> court held that a district court was permitted
to dismiss a complaint for failure to state a claim only if "it
appear[ed] beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to relief."
(continued...)

applied to federal complaints before Twombly.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  Since Iqbal, the Third Circuit has required the district courts to conduct, with regard to Rule 8 allegations, a two-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  [See Iqbal, 129 S. Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in Iqbal.]  In other words, a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the *mere possibility of misconduct, the complaint has alleged-but it has not 'show*[n]'-*that the pleader is entitled to relief*.'"  Iqbal, [129 S. Ct. at 1949-50 (emphasis supplied)].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Fowler, 578 F.3d at 210-11 (emphasis supplied).

---

[3](...continued)
Conley v. Gibson, 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

With these precepts in mind, and mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, see Erickson v. Pardus, 551 U.S. 89 (2007), the Court will determine whether the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### III.  DISCUSSION

A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority."  U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.  Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

A.  Tuberculosis in Correctional Facilities

According to the Centers for Disease Control, tuberculosis ("TB") is a disease caused by *Mycobacterium tuberculosis* which remains a substantial public health challenge in correctional facilities in the United States, since a disproportionately high percentage of TB cases occur among persons incarcerated in such facilities.  See Centers for Disease Control, Prevention and Control of Tuberculosis in Correctional and Detention Facilities: Recommendations from CDC, pp. 1-3 (2006), http://www.cdc.gov/mmwr/preview/mmwrhtml/rr5509a1.htm (last accessed Feb. 3, 2010).  The CDC reports that transmission of TB continues to be documented within correctional facilities as a result of undiagnosed TB, that early identification and successful treatment of persons with TB disease and latent TB infection ("LTBI") remains the most effective means of preventing transmission, and that screening programs in the correctional setting allow for the detection of substantial numbers of persons TB disease and LTBI.  Id. at pp.

4-5.  Persons exposed to inmates with TB disease may become latently infected and persons with LTBI are at high risk for developing TB disease.  Id. at pp. 20, 46.  The Mantoux tuberculin skin testing ("TST") using 0.1 mL of 5 tuberculin units of purified protein derivative ("PPD") is the most common method of testing for active and latent TB infection.  Id. at p. 7.  Id.

The CDC emphasizes that "[t]reatment for LTBI is essential to controlling and eliminating TB disease in the United States because it substantially reduces the risk that TB infection will progress to TB disease."  Id. at p. 23.  Accordingly, the CDC recommends that an inmate with positive test results for LTBI who has no symptoms of TB infection "should be considered for treatment for LTBI," provided a chest radiograph does not indicate pulmonary TB.[4]  Id. at p. 21.  "The preferred treatment for LTBI is 9 months of daily isoniazid or biweekly dosing administered by DOT."  Id. at p. 24.  "Other persons who might be poor candidates for treatment of LTBI include those with a previous history of liver injury or a history of excessive alcohol consumption; active hepatitis and end-stage liver disease are relative contraindications to the use of isoniazid or pyrazinamide for treatment of LTBI."  Id. at pp. 23-4.

---

[4] The CDC does not recommend that a series of lab tests be performed before providing treatment, but prior to starting treatment, TB disease should be ruled out.  CDC Report at p. 23.

B.  Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment obligates jail authorities to provide medical care to inmates.  See Estelle v. Gamble, 429 U.S. 97, 103 (1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The deprivation must be objectively sufficiently serious, id. at 834, and the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[5]  Id. at 837.

Thus, to satisfy the objective element for a claim "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  To satisfy the objective element of a medical claim, the inmate must assert facts showing that the medical need "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's

---

[5] "[I]t is not sufficient that the official should have been aware" of the substantial risk to inmate health or safety.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

attention."[6] <u>Monmouth County Correctional Institution Inmates v.</u>
<u>Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).

Deliberate indifference - the subjective component - may
include "indifference ... manifested by prison doctors in their
response to the prisoner's needs or by prison guards in
intentionally denying or delaying access to medical care or
intentionally interfering with the treatment once prescribed."
<u>Erickson v. Pardus</u>, 551 U.S. 89, 90 (2007) (footnotes and
internal quotation marks omitted).  Deliberate indifference has
been found "where the prison official (1) knows of a prisoner's
need for medical treatment but intentionally refuses to provide
it; (2) delays necessary medical treatment based on a non-medical
reason; or (3) prevents a prisoner from receiving needed or
recommended medical treatment." <u>Rouse</u>, 182 F.3d at 197.

Moreover, "a complaint that a physician has been negligent
in diagnosing or treating a medical condition does not state a
valid claim of medical mistreatment under the Eighth Amendment.
Medical malpractice does not become a constitutional violation
merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at
106; <u>see also</u> <u>Rouse</u>, 182 F.3d at 197 ("in the medical context, an

_____

[6] Where delay is involved, the seriousness of an inmate's
medical need is determined by the effects of the delay.  <u>Id.</u>;
<u>Crowley v. Hedgepeth</u>, 109 F.3d 500, 502 (8th Cir.1997); <u>Hill v.</u>
<u>Dekalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1188-89
(11th Cir. 1994); <u>Olson v. Stotts</u>, 9 F.3d 1475, 1477 (10th
Cir.1993).

inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind") (citation and internal quotation marks omitted).

In the instant Complaint, Plaintiff presents potential Eighth Amendment claims regarding:  (1) administration of the Mantoux TST on August 8, 2007, even though Plaintiff's prison medical chart showed that he had tested positive for LTBI in 2004; (2) treatment of Plaintiff's LTBI with isoniazid, without having previously warned him of the potential side effects and tested his liver and kidney functions, and (3) failure to schedule an oral surgeon to extract the broken tooth.  This Court will consider each potential claim.

First, Plaintiff contends that the nurse (Jane Doe) who administered the TST test on August 8, 2007, violated his Eighth Amendment rights because the CDC recommends against giving the test to someone who previously tested positive, and Plaintiff's prison medical chart showed that he had tested positive for LTBI in 2004 while incarcerated at South Woods State Prison.  The CDC recommends that inmates "who have a documented history of a positive TST result . . . should be exempt from a routine TST." CDC Report, supra, at p. 7. However, Plaintiff's allegations do not state an Eighth Amendment claim because a TB test does not pose a substantial risk of serious harm.  See Harris v.

Correctional Medical Services, 225 Fed. App'x 411 (8th Cir. 2007)
(claim that nurse violated Eighth Amendment when she administered
a TB skin-injection test to inmate, even though she knew he would
have a positive reaction and his arm became swollen, red and
painful, fails because TB test does not pose a substantial risk
of serious harm).  Moreover, the nurse's failure to check his
chart or to know that Plaintiff should have been exempt from
testing was at most negligence, which does not satisfy the
deliberate indifference standard.  Thus, Plaintiff's allegations
regarding the TB test do not satisfy the objective or the
subjective standards.

Next, Plaintiff asserts that defendant Dr. Clemmons and
others violated his Eighth Amendment rights by failing to test
his liver and kidney functions prior to prescribing isoniazid,
failing to inform Plaintiff of the potential side effects of the
medication, and continuing treatment after Plaintiff began to
experience side effects.  The failure to test the liver and
kidney functions prior to starting treatment is not even
negligent, given that the CDC does not require liver or kidney
function tests to be performed prior to prophylactic
administration of isoniazid.  Thus, it does not constitute
deliberate indifference.  In addition, the provision of the
prophylactic treatment, which is recommended by the CDC, does not
satisfy the objective element of an Eighth Amendment claim.

Accordingly, Plaintiff does not assert facts showing that
defendants violated his Eighth Amendment rights by providing such
treatment.  See McCormick v. Stalder, 105 F. 3d 1059 (5th Cir.
1997) (inmate's constitutional rights were not violated when
officials required him to undergo prophylactic treatment with INH
because of a positive TB test, even though he submitted to
medication to avoid isolation, medical officials failed to inform
him of the potentially severe risks of treatment, and his consent
was not obtained); Forbes v. Edgar, 112 F. 3d 262 (7th Cir. 1997)
(rejecting inmate's Eighth Amendment claim that the preventive
therapy she received for LTBI - isoniazid and B-6 administered
biweekly - was not the preferred therapy).

     Plaintiff also asserts that defendants violated his rights
by continuing treatment for a short time after Plaintiff began to
experience side effects.  Given that treatment was admittedly
stopped a short time after the side effects began, these
allegations do not satisfy the objective or the subjective
components of an Eighth Amendment claim.

     Finally, Plaintiff complains that Dr. Lutz cracked his
wisdom tooth during an attempted extraction, and then failed to
schedule an appointment with an oral surgeon for nine months.
Because Plaintiff alleges that Dr. Lutz himself determined that
an oral surgeon was required to complete the extraction,
Plaintiff may be able to show that the nine-month delay, during

17

which time Plaintiff continued to experience acute pain, violated Plaintiff's Eighth Amendment rights.[7]  This Court will allow this claim to proceed against Dr. Lutz and his dental assistant.[8]

### IV.   CONCLUSION

For the reasons set forth above, the Court will grant Plaintiff's application to proceed *in forma pauperis*, allow the Eighth Amendment delay claim to proceed against Dr. Lutz and Mei Qin Sun, and dismiss the remaining claims.


     /s/ NOEL L. HILLMAN
**NOEL L. HILLMAN, U.S.D.J.**

Dated:   June 7 , 2010

At Camden, New Jersey


---

[7] Plaintiff's allegation that Dr. Lutz broke his tooth does not state an Eighth Amendment claim because it is at worst negligence.

[8] This Court will dismiss the remaining individual defendants because Plaintiff's allegations do not show that they were personally involved in the failure to provide treatment by an oral surgeon.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs").  The Court will dismiss the New Jersey State Department of Corrections, Riverfront State Prison, and University of Medicine and Dentistry because they are not "persons" subject to suit under § 1983.  See Will v. Michigan Dept. fo State Police, 491 U.S. 58 (1989).  The Court will dismiss Correctional Medical Services and its Board of Directors without prejudice because Plaintiff's allegations do not show that the delay in scheduling an oral surgeon was attributable to a custom or policy adopted by CMS or its board.