```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LAMONT G. CRYMES,<br><br>            Plaintiff,<br><br>      v.<br><br>NJ DEPT. OF CORRECTIONS, et al.,<br>            Defendants. | Civil No. 09-3277 (NLH/KMW)<br><br>**OPINION** |

**APPEARANCES**

Lamont G. Crymes
445599/SBI #751428A
Northern State Prison
P.O. Box 2300
Newark, New Jersey 07114-2300
      *Pro Se*

Emily A. Samuels, Esquire
Office of New Jersey Attorney General
Department of Law and Public Safety, Division of Law
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
      *Attorney for Defendant, Dr. Steven Lutz*

**HILLMAN, District Judge**

     Plaintiff Lamont Crymes brought this action against Defendant Dr. Stephen Lutz after Dr. Lutz allegedly cracked Plaintiff's tooth during oral surgery, and failed to schedule a follow-up extraction for nine months.[1]  (See Pl.'s Am. Verified

---

1.  Though the complaint alleges a nine-month window, the actual length of time between the failed and successful extractions is closer to ten months: August 27, 2008 to June 25, 2009.  For

Compl. [Doc. No. 1] (hereinafter, "Pl.'s Compl."), ¶ 23.)  On the basis of these facts, Plaintiff, an inmate at Northern State Prison, alleges a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  He seeks redress under 42 U.S.C. § 1983.  Defendant contends that Plaintiff failed to exhaust his administrative remedies, and has therefore filed the instant motion to dismiss and for summary judgment.

For the reasons expressed below, Defendant's motion for summary judgment is granted.

## I. JURISDICTION

Plaintiff, appearing pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment rights.  As such, this Court exercises federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

On or about August 27 or 28, 2008, Defendant Dr. Lutz scheduled Plaintiff for an extraction of tooth #32, his right wisdom tooth.  (Pl.'s Compl. ¶ 23; see also Statement of Material Facts as to which there is No Genuine Dispute Pursuant to L. Civ. R. 56.1 [Doc. No. 21-4] (hereinafter, "Def.'s Statement of Material Facts"), ¶ 3.)  During the attempted extraction, Defendant cracked the tooth, leaving the remaining piece in

---

purposes of this opinion, the length of time will be referred to as a ten-month period.

Plaintiff's mouth.  (Pl.'s Compl. ¶ 23; see also Def.'s Statement of Material Facts ¶ 3.)  Though Defendant and another dentist, Dr. Krantz, attempted on October 14, 2008 and February 11, 2009 to perform the extraction, Plaintiff refused treatment, signing refusal of consent forms on both occasions.  (Def.'s Statement of Material Facts ¶¶ 4-9; see also Decl. of Dr. Louis Colella Decl. [Doc. No. 22-6] (hereinafter, "Colella Decl."), ¶¶ 5-9; Exs. B-D of Colella Decl.)  As a result, Plaintiff's tooth was not extracted until ten months later, on June 25, 2009, after his transfer to Northern State Prison.  (Colella Decl. ¶ 10.)

   Approximately two weeks after the successful extraction, Plaintiff submitted his complaint on July 6, 2009.  He alleges that the above facts demonstrate deliberate indifference to a serious medical need, in violation of his Eighth Amendment right to be free of cruel and unusual punishment.  (See generally Pl.'s Compl. 23, 42-43.)  By Order dated June 7, 2010, the Court granted Plaintiff's application to proceed in forma pauperis. (Order [Doc. No. 4] 1, June 7, 2010).  The Order dismissed all Defendants[2] except for Dr. Lutz and his dental assistant, Mei Qin

---

2.  The Court dismissed the following Defendants from this action: Correctional Medical Services, Inc. ("CMS"); CMS's Board of Directors, the New Jersey Department of Corrections ("NJDOC"); Riverfront State Prison Medical Department; the University of Medicine and Dentistry of New Jersey ("UMDNJ"); George Hayman; Peter Rosellie; Grace Rogers; Robin Clemmons; July Llagas; Lisa Johnson; Mary O'Donell; Jane Doe; Elizabeth Stewart-Jones; and Correctional Officer Flynn.  (Op. [Doc. No. 3] 18 n.8, June 7, 2010; Order [Doc. No. 4] 2, June 7, 2010.)

3

Sun.[3] (Id. at 1-2.) The Order also dismissed all claims except Plaintiff's Eighth Amendment claim asserting a delay in scheduling surgery by an oral surgeon, and denied without prejudice Plaintiff's application for appointment of pro bono counsel. (Id. at 1.) Presently before the Court is Defendant's motion [Doc. No. 21] to dismiss and for summary judgment, filed on March 30, 2011.

### III. DISCUSSION

#### A. Standard of Review on Summary Judgment

In the present motion, Defendant moves for dismissal of Plaintiff's complaint under Rule 12(b)(6), or alternatively, for summary judgment under Rule 56, based on Plaintiff's alleged failure to exhaust his administrative remedies before filing this

---

3. Pursuant to Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). The Court notes that previous attempts to serve one of the remaining defendants, Mei Qin Sun, were unsuccessful. (See Summons Returned Unexecuted as to Mei Qin Sun [Doc. No. 7] 1) ("unable to locate no longer at that location[.]") By Order dated June 2, 2011, the Court extended the time within which to effect service on this Defendant until July 15, 2011. (Order [Doc. No. 24] 2, June 2, 2011.) At this time, it appears that Defendant Mei Qin Sun has not been served. As such, the action against this Defendant is subject to dismissal without prejudice after notice to Plaintiff. FED. R. CIV. P. 4(m). However, based on the Court's finding infra that Plaintiff's claims under Section 1983 must be dismissed based on his failure to exhaust administrative remedies, the Court finds that providing notice to Plaintiff of the potential Rule 4(m) dismissal would be futile. Accordingly, Plaintiff's claims against Defendant Mei Qin Sun are dismissed without prejudice.

action. (Br. in Supp. of Mot. to Dismiss and for Summ. J. [Doc. No. 21-1] (hereinafter, "Def.'s Br."), 1-2.) Depending on the particular circumstances of the case, either dismissal or summary judgment may be appropriate to dispose of a complaint where the plaintiff failed to exhaust his administrative remedies.

Dismissal under Rule 12(b)(6) is appropriate where it is evident from the face of the complaint that a bar to suit has been violated. See Pena-Ruiz v. Solorzano, 281 F. App'x 110, 112 n.3 (3d Cir. 2008) (recognizing "that a district court has the inherent power to dismiss sua sponte a complaint ... which facially violates a bar to suit" such as failure to exhaust administrative remedies); Ray v. Kertes, 285 F.3d 287, 295 n.5 (3d Cir. 2002) (noting that where "plaintiff-prisoners explicitly conceded their failure to exhaust administrative remedies" these "dismissals would thus fall within a district court's inherent power to dismiss sua sponte a complaint which facially violates a bar to suit"). These cases reinforce the notion that "failure to exhaust ... is only an appropriate grounds for 12(b)(6) dismissal if the defect is apparent from the face of the complaint[.]" Watson v. Sec'y Pennsylvania Dep't of Corr., No. 10-2918, 2011 WL 2678920, at *6 n.5 (3d Cir. July 8, 2011) (citing Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997)). In this case, Plaintiff did not concede on the face of his complaint his failure to exhaust administrative remedies, nor

5

is it apparent from the face of the complaint that Plaintiff did not exhaust administrative remedies.  Therefore, dismissal pursuant to Rule 12(b)(6) for failure to exhaust is not appropriate in this instance.  See, e.g., Pena-Ruiz, 281 F. App'x at 112 n.3; Ray,285 F.3d at 295 n.5; Rycoline,109 F.3d at 886.

    Although the Court cannot dismiss Plaintiff's complaint under Rule 12(b)(6) in these circumstances, Defendant alternatively seeks summary judgment.  Where the parties submit materials extraneous to the pleadings in connection with a Rule 12(b)(6) motion, and those materials are not excluded by the Court, the motion must be treated as one seeking summary judgment under Rule 56.  FED. R. CIV. P. 12(d).  In the instant case, matters outside the pleadings, including but not limited to, Inmate Remedy System forms, Dental Charts, and Consent Forms, were submitted to the Court and have not been excluded.  Because the Court has relied on matters outside the pleadings, the standard on a motion for summary judgment is applicable in this case.[4]  See Gardner v. Hendricks, No. 04-3561, 2006 WL 2331102, at *2 (D.N.J. Aug. 10, 2006) (citing Rose v. Bartle, 871 F.2d

---

4.  Because Defendant's motion is a motion to dismiss and for summary judgment, Plaintiff was on notice that the Court could convert the motion to one for summary judgment.  See Serbin v. Consolidated Rail Corp., 140 F. App'x 336, 337 n.1 (3d Cir. 2005) (finding plaintiff "knew that the motion could be treated as one for summary judgment" where defendant filed a "motion to dismiss, or in the alternative, for summary judgment") (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)).

331, 339-40 (3d Cir. 1989)); see generally Ingram v. S.C.I. Camp Hill, No. 11-1025, 2011 WL 4907821 (3d Cir. Oct. 17, 2011) (demonstrating that summary judgment may properly be granted for failure to exhaust administrative remedies when the district court considers matters outside the pleadings); Greer v. Smith, 59 F. App'x 491, 492 (3d Cir. 2003) (holding that the district court erred in granting a motion to dismiss, rather than summary judgment, where it considered materials extraneous to the pleadings showing failure to exhaust administrative remedies).

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be

believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must

8

identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### B. Exhaustion of Administrative Remedies Under the PLRA

Defendant's motion for summary judgment asserts that Plaintiff's claims are barred because he failed to exhaust the administrative remedies available to him in prison before instituting this action.  (Def.'s Br. 12-15.)  The Prison Litigation Reform Act ("PLRA") provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  While administrative exhaustion is a mandatory prerequisite to the filing of a Section 1983 action by a prisoner, "failure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Wallace v. Kato, 549 U.S. 199, 216 (2007).  If the failure to exhaust administrative remedies is shown, a motion to dismiss or motion for summary judgment may be properly granted, depending on the circumstances of the case.  See, e.g., Terrell v. Benfer, 429 F.

App'x 74, 77 (3d Cir. 2011) (affirming summary judgment for defendants where court relied on matters outside the pleadings which demonstrated failure to exhaust); Ray, 285 F.3d at 295 (finding dismissal appropriate where plaintiff-prisoner admits on face of his complaint his failure to exhaust). Exhaustion is a requirement even where the prisoner seeks a remedy that the administrative grievance process does not or cannot provide, such as monetary damages. Woodford v. Ngo, 548 U.S. 81, 85 (2006). The Third Circuit came to the same conclusion several years earlier when it found that no "futility exception" exists which would excuse a failure to exhaust remedies even when the remedy sought is unavailable. Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000).

As recognized by the Supreme Court, the PLRA serves multiple purposes. "Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits[.]" Porter v. Nussle, 534 U.S. 516, 524 (2002). The PLRA affords corrections officials with "time and [an] opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 525. By providing this opportunity to administratively remedy an inmate grievance, it may be possible to "obviat[e] the need for litigation." Id. at 525 (citing Booth v. Churner, 532 U.S. 731, 737 (2001)). In other cases, the administrative review process may serve to "filter out some

10

frivolous claims[.]" Booth, 532 U.S. at 737. Importantly, the PLRA applies not only to "prison conditions" as per the plain text of the statute, but also to "occurrences" affecting prisoners and "prison life" in general. Porter, 534 U.S. at 521, 532.

As recognized by the Third Circuit, "[u]nder the Prison[] Litigation Reform Act, a prisoner must exhaust available administrative remedies before bringing suit concerning prison conditions." Daniels v. Rosenberger, 386 F. App'x 27, 29 (3d Cir. 2010) (citing 42 U.S.C. § 1997e(a)). The applicable procedural rules for properly exhausting administrative remedies "are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" Jones v. Bock, 549 U.S. 199, 218 (2007). Because different correctional institutions may have distinct grievance processes, "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id.

In Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002), the Third Circuit addressed the issue of whether the grievance procedure in an inmate handbook promulgated by a NJDOC state prison, but not formally adopted by the State Department of

11

Corrections, constituted an administrative remedy for purposes of Section 1997e(a) of the PLRA. Though the grievance procedure at issue was deemed a "relatively informal [one] ... established by the prison administrators of the NJSP and published in the Department of Corrections Inmate Handbook[,]" the process was considered an "administrative remedy" within the meaning of the PLRA for several reasons. Id. at 1352-54. First, it gave inmates the opportunity to inform prison administration about any complaints. Second, it provided for written responses to inmates. Third, the written responses were subject to review by supervisors. Fourth, final resolutions required signatures by multiple administrative parties. Id. at 1354. Important in the Third Circuit's calculus was the fact that the grievance procedure at issue furthered an important goal of the PLRA: providing a forum through which inmates could potentially resolve their disputes, thereby reducing the quantity of prisoner litigation. Id. at 1354-55. Furthermore, "[f]or cases ultimately brought to court, the remedy form submitted by the inmate and the written response provided by the prison administration could facilitate adjudication by clarifying the contours of the controversy." Id. at 1354-55 (citing Porter, 534 U.S. at 525). Whether or not an administrative remedy is formally adopted by a State Department of Corrections is "irrelevant to these rationales for exhaustion." Id. at 1354.

12

### C. Grievance Procedure at Northern State Prison

The grievance procedure available to the instant Plaintiff falls within the category of an "administrative remedy" as interpreted by the Third Circuit in Concepcion. An analysis of the Inmate Remedy System Procedure, adopted by the officials at Northern State Prison, bears out this conclusion. (See Decl. of Peggy Brooks [Doc. No. 21-8] (hereinafter, "Brooks Decl."), ¶¶ 3-14; see also Exs. F-G to the Brooks Decl.)

The Inmate Handbook for Northern State Prison, attached as Exhibit F to the Brooks Declaration, establishes the general grievance procedure for resolving inmate complaints: "[a]ny complaints involving staff members should be written on an 'I.R.F.' (Inmate Remedy Form) and forwarded to the office of the Administrator. Upon receipt of the complaint, it will be reviewed and forwarded to the appropriate department head for investigation. The results of the investigation will be reviewed and a response will be sent. If no response is received by the inmate within 30 days, that inmate may submit an Administrative Remedy Form." (Inmate Handbook for Northern State Prison, Ex. F. to the Brooks Decl., § XVII.) The specifics of the Inmate Remedy System procedure are explained in the Feb. 5, 2008 memorandum (hereinafter, "IRF Memo") distributed to the inmate population. (IRF Memo, Ex. G to Brooks Decl.) The IRF Memo informs that the overarching purpose of the procedure is to provide for

13

administrative resolution of grievances and encourage internal problem-solving.  (Id. at § I.)  The IRF Memo makes clear that the Inmate Remedy System and the accompanying appeals process *must* be used to resolve personal complaints about prison conditions or occurrences.  (Id. at § II.)  Inmates are required to utilize the Inmate Remedy System *before* applying to the courts for relief.  (Id.)  The process begins with proper completion of an Inmate Remedy System Form, including name, SBI number, institution, housing unit, and complaint or question.  (Id. at § II(B)1-3.)  An answer will follow within 30 days.  (Id. at § II(B)7.)  If the inmate is unsatisfied with the answer he receives, within ten days he must submit that answer and complete "Part 4" of the Inmate Remedy System Form, labeled Inmate's Administrative Appeal Information.  (Id. at § II(B)7.)  The resultant response from that administrative appeal is considered a final decision at the correctional facility level.  (Id. at § II(C)4.)

    Based on the submissions by Defendant, it is apparent that Plaintiff was aware of and utilized the Inmate Remedy System procedure at Northern State Prison.  In the ten-month period between the failed and successful extractions of his tooth, Plaintiff filed three Inmate Remedy System Forms while incarcerated at Riverfront State Prison.  (See Decl. of Kenneth Rozov [Doc. No. 21-7] (hereinafter, "Rozov Decl.") ¶ 2, 4; see

also Request System and Remedy Forms, Ex. E to Rozov Decl.)  One dealt with the balance in Plaintiff's inmate trust account, while the other two requested phone calls to his lawyers.  (Request System and Remedy Forms, Ex. E to Rozov Decl.)  Even construed liberally, none of those forms suggests that the basis for the grievance was related to the failed extraction of Plaintiff's tooth.  Moreover, "Part 4", the completion of which is required for a proper appeal, is left blank on each of these three Inmate Remedy Forms.  (Id.)  This evidences that the resolutions of these grievances were never appealed by Plaintiff.  Plaintiff, therefore, did not exhaust his administrative remedies.

Approximately a year and a half after filing the complaint, Plaintiff submitted his fourth Inmate Remedy System Form, dated December 6, 2010.  (Inmate Remedy System Form, Ex. H. to Brooks Decl.)  While it is unclear whether this Inmate Remedy System Form was completed specifically to redress the tooth extraction at issue, the Court assumes, for purposes of this summary judgment motion, that it was.[5]  Plaintiff's submission of this form resulted in immediate referral to a registered nurse, and an

---

5.  The gravamen of this Inmate Remedy System Form includes "inappropriate contractual performance by UMDNJ."  (Inmate Remedy System Form, Ex. H. to Brooks Decl., 1.) A typed letter attached to the Form, also written by Plaintiff, explains: "Deliberate indifference policies to inmates [sic] serious medical needs, in violation of the Eighth Amendment, through deviant performance from the stated contractual agreement by and with University of Medicine and Dentistry of New Jersey, (UMDNJ)."  (Inmate Remedy System Form, Ex. H. to Brooks Decl., 2.)

15

examination by a doctor. (Inmate Remedy System Form, Ex. H. to Brooks Decl., 1.) Construed liberally, this form comes closest to alleging a grievance regarding the allegation in the complaint because it is purportedly based on "inappropriate contractual performance by UMDNJ." (Id.) However, two problems exist with this Inmate Remedy System form. First, the PLRA requires that administrative remedies be exhausted *prior to,* not concurrently with or after the filing of any action in court. See, e.g, DiGiovanni v. New Jersey Dep't of Corr., 232 F. App'x 181, 183 (3d Cir. 2007) (affirming summary judgment for defendants and finding plaintiff's complaint was "indisputably barred [based on his] failure to exhaust available administrative remedies" where he did not pursue an administrative remedy until two years after initiating suit); Oriakhi v. U.S., 165 F. App'x 991, 993-94 (3d Cir. 2006) (affirming the dismissal of inmate's claim where he initiated suit in April 2001, but didn't commence the administrative review process until May 2001). Here, Plaintiff filed his complaint on July 6, 2009. Plaintiff's fourth Inmate Remedy System Form, even if liberally construed as seeking administrative remedy of the issue, was not submitted until December 6, 2010. (Inmate Remedy System Form, Ex. H. to Brooks Decl., 1-2.) It is evident, therefore, that Plaintiff failed to seek an administrative remedy until nearly eighteen months after he submitted his complaint to the Court. Second, "Part 4" of the

Inmate Remedy System Form, which is required for proper appeal by the inmate, is left blank. (Id. at 1.) Therefore, Plaintiff did not properly appeal the resolution of his grievance.

Based on the foregoing, Plaintiff failed to properly exhaust all available administrative remedies prior to filing suit. His claim is thus barred by the PLRA and interpretive case law. Furthermore, because Plaintiff failed to exhaust his administrative remedies before filing this action with the Court, "his claims cannot be considered by this Court and thus, the merits of Plaintiff's claims, which are also the subject of Defendant['s] motion, may not be considered." Bektemba v. McGreevey, No. 05-2939, 2007 WL 174165, at *3 (D.N.J. Jan. 22, 2007). Accordingly, Plaintiff's claims under Section 1983 are dismissed without prejudice.[6]

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted. An Order consistent with this Opinion will be entered.

Date: December 22, 2011      /s/ Noel L. Hillman
At Camden, New Jersey      HON. NOEL L. HILLMAN, U.S.D.J.

---

6. Although the Court grants Defendant's motion for summary judgment based on Plaintiff's failure to exhaust, the dismissal of Plaintiff's claim is without prejudice. See Nifas v. Beard, 374 F. App'x 241, 245 (3d Cir. 2010) (affirming grant of summary judgment and dismissal of plaintiff's federal claims and noting the "dismissal of these claims, of course, [was] without prejudice.")